## Savage's Estate.

*Guardian and ward—Rent—Surcharge.*

A guardian was surcharged $5.00 a month on account of the rent of an office in a building belonging to his ward. It appeared that the real estate in question had been left by an uncle to the ward. Before the uncle's death the guardian rented the office from the uncle for $10.00 a month, and was instructed to rent the remainder of the building as a dwelling for $25.00 per month. For his own convenience he rented the dwelling part to a family without children for $20.00 per month, contributing the remaining $5.00 out of his pocket. Subsequently he secured a tenant for $25.00 per month, and thereafter paid $10.00 for the office, which payment he continued after he became guardian. *Held,* that there was no ground for surcharge.

Where an auditing judge finds that a guardian accepted rebates from tradesmen, and this finding is confirmed by the court below, and the guardian is denied commissions, the appellate court will not interfere.

*Guardian and ward—Costs—Witness fees.*

A guardian should not be charged with fees of a large number of witnesses (mechanics who did the work), summoned at the instance of the exceptant to his account, to prove that repairs which he had made were necessary, the witnesses not having been called, and where it appears that the necessity for but not the fact that the repairs were made was denied.

Argued Dec. 14, 1904. Appeal, No. 223, Oct. T., 1904, by Louis F. Purcell, Guardian, from decree of O. C. Phila. Co., Oct. T., 1894, No 263, dismissing exceptions to adjudication in Estate of William H. Savage. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Exceptions to adjudication.

The facts appear by the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to adjudication.

*A. J. Maloney*, with him *C. Maloney*, for appellant.

*Simon Garlic*, with him *William M. Lewis* and *A. S. Ashbridge*, for appellee.

OPINION BY BEAVER, J., January 17, 1905:

The appellant, the guardian of Savage, was surcharged on the auditing of his guardianship account with $130, the one half of the amount of the difference between his office rent at $15.00 and $10.00 per month, the finding of the auditing judge in regard thereto being: "It does not clearly appear the guardian was justified in reducing his own office rent from $15.00 to $10.00 per month." If it appeared in any way that the guardian did make such a reduction, we would not, of course, interfere with the finding of the auditing judge, confirmed by the court below. We have read the testimony very carefully, however, and fail to find any evidence whatever of any such reduction.

The appellant's account of the transaction, whose was the only testimony upon the subject, was, in the main: "When I first rented that room—1034 Pine St.—from Thomas Y. Savage, who was the uncle of this minor, I rented it for $10.00 a month and he instructed me to rent the dwelling part for $25.00. I had several applicants for the premises and could have rented it for $25.00 but they had children and so that the party that rented the premises were not paying more than $20.00 a month but they were very desirable parties and I rented it to them and voluntarily contributed $5.00 a month toward the rent, while they remained in the property. I did this on account of their not having children running through the hallway and around annoying me in the office, and after they moved out I rented the property for $25.00 and, of course, did not contribute anything toward the rent." In answer to a question by his attorney, he said:

"Q. And that was the rent, when you became guardian?

A. Yes. When the present owner got this property from Thomas Y. Savage, I was at that time paying $10.00 a month rent, according to my agreement, collected $25.00 from the dwelling part and that lease has remained so. I never at any time agreed to pay more than $10.00 a month to Thomas Y. Savage or anybody since. It has always remained the same."

We fail to see, therefore, upon what ground it could be charged, under any circumstances, that the appellant had reduced the amount of his rent. His original agreement was to pay $10.00 per month. It is true that, for his own comfort, convenience and satisfaction, he contributed a portion of the rent of the house, in order to avoid the noise and annoyance of children therein ; but that condition of things, even admitting that it amounted to an increase of his own rent, ceased before he became the guardian, and the original agreement was then in force. There is nothing which contradicts this statement of his and we are, therefore, of opinion that he should not have been surcharged the amount of the difference between $15.00 and $10.00 per month for his office rent.

In the matter of commissions, the testimony was not entirely clear. There was some evidence at the first hearing that the appellant had received commissions or discounts or rebates from some of the tradesmen with whom he had dealt in reference to the ward's real estate. He subsequently corrected that by saying that, whilst he had received rebates during the time that he was guardian for the older brother of his ward, he had not received any upon any item in the present account. A witness was called, to whom he had given a check for $10.80 in payment of a $12.00 bill. The witness said, however, that he had received, in addition to the check, $1.20 in currency. The transaction was on its face somewhat suspicious. We cannot say that the court was not warranted in finding, as a matter of fact, that such a discount or rebate had been received by the guardian, particularly in view of his previous testimony. There was testimony from which there could be easily and fairly inferred some irregularity on the part of the guardian in this respect in dealing with his ward's estate. However inconsiderable the amount may have been, it was, according to the finding of the auditing judge, confirmed by the court, of such a character that, the fact of the irregularity or malfeasance

being found, they were justified in refusing to allow any commissions. We cannot say that this was wrong, inasmuch as the finding rests upon enough of a basis of fact to forbid our saying that there was no evidence upon which to found the conclusion.

In regard to the question of the costs of witnesses. After the adjournment of the first hearing, the counsel for the ward gave notice to the counsel for the appellant, in part, as follows : " On behalf of the minor, William H. Savage, for the purpose of facilitating matters, we will admit that the work, labor and articles charged have been furnished to the estate of the said minor, but we cannot consistently admit that the same are necessary and, if it will require seventeen or eighteen witnesses to present this fact, both Mr. Ashbridge and myself are of the opinion that this must be proven." Just how the presence of these witnesses could prove the necessity for the repairs which had been made does not appear to us and was apparently not clear to the court. The most of which they could testify would be naturally that they had made the repairs. Whether those repairs were necessary depended upon the condition of the several properties, the demands of the tenants, the stipulations in the several leases in regard to repairs, the judgment of the guardian and a legal conclusion to be gathered from all these sources. The requirement, therefore, of the attendance of the mechanics and others for this purpose, was unreasonable and unnecessary. We do not think it fair that the guardian should be compelled to meet these expenses, particularly in view of the fact that the witnesses were not called, and, as to them, we are of the opinion they should be paid by the appellee. This does not apply, however, to the witnesses who were actually called and testified as to other things.

Upon a consideration of the whole case, it is ordered that the decree of the court below be reversed, as to the surcharge for rent and affirmed as to the disallowance of commissions; that the clerk's costs, as directed in the decree of the court below, be paid by the appellant and that the fees of witnesses in attendance not called to testify and the costs of this appeal be paid by the appellee.